# MAY, 1927

## CURRIE MCCUTCHEON ET AL. V. FRANK WOZENCRAFT, MAYOR, ET AL.

No. 3675.    Decided May 4, 1927.

(294 S. W., 1105).

**1.—Cities—Home Rule Charter—Conflict With Law of State.**

A charter adopted by a city under the "Home Rule Amendment" to the Constitution and ordinances passed thereunder must contain no provision inconsistent with the Constitution or general laws of the State.    (P. 443).

**2.—Same—Franchise—Use of Streets.**

The governing authority of a city (city council or commission) is given by statute exclusive power to make any grant of a franchise to use its public streets, though their ordinance granting such right may be submitted to popular vote before taking effect.    Rev. Stats., 1925, Arts. 1181, 1175. (P. 445).

**3.—Same—Charter of Dallas.**

The charter of the City of Dallas (Subd. 1, Sec. 8, Art. 2) in providing

that a franchise refused by its governing body (Board of Commissioners) may nevertheless, on petition as there provided, be submitted to and adopted by popular vote, is invalid because contrary to the general law of the State which places such grant under control of the city's Board of Commissioners and permits submission to ratification by popular vote of such franchises only as the Board has first approved.    (Pp. 442-445).

#### 4.—Same—Motor Bus—Mandamus.

Plaintiffs applied to the Board of Commissioners of the City of Dallas for a franchise permitting them to operate motor omnibusses on certain streets for public conveyance.    The franchise being refused by the Board, they sought, by compliance with the city charter providing therefor, to require the Board to submit to public vote the granting of such franchise, and on refusal sued to compel such action by mandamus.    *Held* that mandamus was properly refused, and that it was not material whether the right plaintiffs sought be regarded as a franchise to use the streets or as a mere license.    (Pp. 442-445).

Error to the Court of Civil Appeals for the Seventh District, in an appeal from Dallas County.

McCutcheon and others sued seeking mandamus against Wozencraft and others constituting the Board of Commissioners of the City of Dallas.    On a demurrer sustained to their petition plaintiffs were denied recovery and appealed.    On affirmance 230 S. W., 733) they obtained writ of error.

*McCutcheon & Church,* for plaintiffs in error.

The plaintiffs' petition stated a cause of action against the respondents and the court should not have overruled same. Charter of Dallas, Art. 2, Sec. 8, Subd. 4.

*Allen Charlton, Hugh S. Grady,* and *James J. Collins,* for defendants in error.

The plaintiffs in error in the present case are seeking to mandamus the governing authorities from exercising a power that is left wholly and exclusively to their discretion under the State statutes.    Art. 1096a, Title 22 of Chap. 17, p. 207, Complete Texas Statutes; Denison v. Foster, 90 Texas, 22, 36 S. W., 401; Thompson v. Baker, 90 Texas, 163, 38 S. W., 21; State of Nevada v. White, 50 L. R. A. (N. S.), 195.

*Sewall Myer,* City Attorney of Houston; *J. Bouldin Rector,* City Attorney of Austin; *Templeton, Beall, Williams & Worsham,* and *Bell, Worsham, Rollins, Burford & Ryburn,* by leave of the court, filed arguments as *amici curiae* in favor of defendants in error.

MR. JUSTICE PIERSON delivered the opinion of the court.

Plaintiffs in error applied to the Board of Commissioners of the City of Dallas for the grant of a franchise to use the streets of the city for the purpose of operating a system of busses for transporting passengers and freight for hire in the City of Dallas and between said city and other cities and villages in the surrounding territory. They designated certain routes within the city over which they sought a franchise to so operate their bus system for a period of twenty years. Their petition to the Board of Commissioners showed a compliance with charter provisions relating to a grant of a franchise, and a proper franchise ordinance was presented.

The Board of Commissioners refused to grant the franchise, and also refused to submit said franchise ordinance to a vote of the qualified citizens of the City of Dallas, as provided for in Subd. 4 of Sec. 8, Art. 2, of the city's charter.

This suit was brought in the District Court, praying for a mandamus to require the Board of Commissioners to submit said franchise ordinance to a vote of the citizens under said referendum provision of the city charter. The petition for mandamus contained the usual and requisite allegations, and showed a compliance with the provisions of the city charter.

The District Court denied the mandamus, and its judgment was affirmed by the Honorable Court of Civil Appeals for the Seventh District.

A writ of error was granted, and the case was transferred to Section B of the Commission of Appeals.

The Commission, in an opinion by Judge McClendon, held the right to use the streets of Dallas as provided for by the Dallas city charter to be a franchise, and that under the pleadings and facts of the case plaintiffs in error are entitled to have their application for such a franchise submitted by the City Council to a vote of the citizens of Dallas. (255 S. W., 716.)

On rehearing, the Commission, in an opinion by Judge Stayton, held the right sought to be only a license, as did the Honorable Court of Civil Appeals, and that plaintiffs in error were not entitled to have the franchise ordinance submitted to a vote of the electors.

The case was withdrawn from the Commission, all previous orders were set aside, and the case was set for argument and submission before the court.

The real question which controls this case is whether a franchise to use and occupy the public streets, avenues, alleys, and grounds of a city may be granted by a vote of the qualified voters

of a city under a referendum provision of a city charter, *i. e.*, whether the general statutes of the State have not placed this power and authority exclusively within the jurisdiction and control of the governing body of a city, and only after such a franchise ordinance has been passed by the governing authorities that it may be submitted to a vote of the citizens for their approval or rejection.

It is a well recognized principle of law that charters and ordinances of cities must conform to the Constitution and general laws of the State, and is expressed in the Enabling Act putting into effect the Home Rule Amendment to the Constitution, in the following language:

"Cities having more than five thousand inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters, subject to such limitations as may be prescribed by the Legislature. No charter or any ordinances passed under said charter shall contain any provision inconsistent with the Constitution or general laws of this State."

We find that the general law reposes the power and authority to grant a franchise to use and occupy the streets and public grounds of a city with the governing body, i. e., the City Council or Board of Commissioners.

The general statutes, included in the Enabling Act to the Home Rule Amendment, provide that only the governing authorities shall have power to grant rights or franchises over the streets of a city, and that only such ordinances, passed by the governing authorities in the manner prescribed by law, which have granted such a franchise shall be submitted to a vote of the electorate upon petition therefor; and therefore where the governing authorities have not passed an ordinance, but declined or refused to pass an ordinance granting such a franchise, the Council cannot submit such refused ordinance to a vote, for the reason that the general law limits such referendum to an ordinance granting a franchise to use the streets, and its action refusing such a franchise is conclusive.

Art. 1181, R. S., 1925 (Complete Texas Statutes, 1920, Art. 1096i), provides:

"No charter or any amendment thereof framed or adopted under this chapter, shall ever grant to any person, firm or corporation any right or franchise to use or occupy the public streets, avenues, alleys or grounds of any such city, but the *governing authority* of any such city shall have the *exclusive* power and authority to make any such grant of any such fran-

chise or right to use and occupy the public streets, avenues, alleys and grounds of the city. If, at any time, *before any ordinance granting a franchise takes effect,* a petition shall be submitted to the governing authority signed by five hundred of the bona fide qualified voters of the city, then the governing body shall submit the question of granting such franchise to a vote of the qualified voters of the city, at the next succeeding general election." (Italics ours.)

This is further supported by Sec. 12 of Art. 1175, which, in enumerating the powers granted to cities, provides that cities shall have power

"To prohibit the use of any street, alley, highway or grounds of the city by any telegraph, telephone, electric light, street railway, interurban railway, steam railway, gas company, or any other character of public utility without first obtaining the consent of the *governing authorities* expressed by ordinance and upon paying such compensation as may be prescribed and upon such condition as may be provided by any such ordinance. * * * In order to ascertain all facts necessary for a proper understanding of what is or should be a reasonable rate or regulation, the governing authority shall have full power to inspect the books and compel the attendance of witnesses for such purpose." (Italics ours.)

The charter of the City of Dallas, Subd. 1, Sec. 8, Art. 2, as quoted in Judge McClendon's opinion, 255 S. W., 716, declares that the ownership, right of control, and use of the streets, etc., is inalienable in said city, except by ordinance passed by a majority of the Board of Commissioners; and in Subd. 2 that the city shall have power by ordinance to grant a franchise or right to use said property of the city for the purposes asked by plaintiffs in error; and in the first part of Subd. 4 that the city shall have power by ordinance to grant such franchises only by a vote of a majority of the Board of Commissioners, and further regulates and safeguards how such franchise ordinance shall be enacted; and after an ordinance has been passed granting such a franchise to use the streets and public property, Subd. 4 provides:

"That if at any time before such ordinance shall finally take effect ·a petition or petitions shall be presented to the Board of Commissioners signed by five hundred of the bona fide qualified voters of the city, then the Board of Commissioners shall submit the question of the granting of said franchise to a vote of the qualified voters of the City of Dallas at the next succeeding general election to be held in the city, provided that notice

thereof shall be published at least twenty days successively in a daily newspaper published in said city prior to the holding of said election." * * *

And then adds:

"In case a franchise is refused by the Board of Commissioners then the matter may be submitted to the qualified voters on petition, as hereinbefore provided, and a failure to finally pass on an application within six months after the filing of such application shall be construed as a refusal. The Board of Commissioners in passing an ordinance granting. a franchise may provide therein that it shall not take effect until the same shall have been submitted to and approved by a majority of the qualified voters voting thereon at a general election."

This last paragraph is in direct conflict and inconsistent with Art. 1181, Rev. Stats., above quoted, wherein it provides that the governing body of the city shall have exclusive power and authority to make a grant of such a franchise. Said Art. 1181 provides also that only when such governing body shall grant a franchise to use or occupy the public streets, etc., and a petition, as provided for, is submitted to the governing body, *then* the governing body shall submit the question of granting the franchise to the voters of the city.

The general statute does not authorize a proposed franchise to be submitted to a vote of the electorate of the city unless the Council has, by a majority vote, granted such franchise, but limits the referendum to proposed franchises that have been granted by the Council. This places with the governing authority —the City Council—general control over the granting of rights or franchises to use the public streets for transporting passengers and freight for hire, and makes its rejection of a franchise absolute; and when one is granted by the Council, gives the electorate, under certain regulations, the power to reject it. Thus the general law restricts the granting of a right or franchise to use or occupy the public streets of a city to the governing body of the city, and further safeguards the granting of such a franchise by providing a means of rejecting it by a vote of the electors of the city after it has been granted by the governing body.

Whether the right or privilege sought by relators to use the streets of Dallas for the purpose of operating a bus system and transportation lines is a franchise or a license, is not controlling in this case.

The Honorable District Court properly denied the mandamus

prayed for, and, for the reasons given, the judgments of that court and of the Honorable Court of Civil Appeals are affirmed. Associate Justice Greenwood did not sit in this case.