**McCARTY et al. v. JARVIS et al.**

No. 13391.

Court of Civil Appeals of Texas. Fort Worth.

June 5, 1936.

Rehearing Denied Sept. 11, 1936.

Claude Spratling, of Fort Worth, for appellants A. H. McCarty and Elvin E. Kunkel.

Chas. T. Rowland and A. C. Heath, both of Fort Worth, for appellants Jerome C. Martin and W. J. Hammond.

R. E. Rouer, Geo. C. Kemble, J. M. Floyd, and R. B. Young, Jr., all of Fort Worth, for appellees.

DUNKLIN, Chief Justice.

A. H. McCarty and Elvin E. Kunkel have appealed from an order of Hon. A. J. Power, as judge of the district court of Tarrant county of the Ninety-Sixth judicial district, denying their petition for a writ of mandamus to compel Van Zandt Jarvis, mayor, and other members of the city council of the city of Fort Worth, to submit to the qualified voters of the city for adoption or rejection a proposed amendment to the charter of the city.

According to allegations in plaintiffs' petition, the defendants, as members of the city council, have refused to grant a petition signed by more than 10 per cent. of the qualified voters of the city, including plaintiffs, to submit the proposed amendment to the city charter to the voters of the city at an election to be called for that purpose, in violation of the provisions of articles 1166 and 1170, Rev.Civ.Statutes of 1925, and the suit was brought by plaintiffs in behalf of all those petitioners to enforce the rights given by those statutes; with further allegations that the city of Fort Worth is a city of more than 5,000 inhabitants and subject to those statutory provisions.

Following is the petition presented to the city council and refused:

"A petition to the City Council for an amendment to the charter of the City of Fort Worth requiring a majority vote for the election of City Councilmen.

"Petition.

"Believing that it is in accordance with the universally recognized democratic principles of government that the City Councilmen of the City of Fort Worth should be elected by a majority vote instead of a plurality, the undersigned qualified voters of the City of Fort Worth respectfully petition the Honorable City Council of the City of Fort Worth to call therein a charter election within ninety days from the filing of this petition and to submit thereat without alteration or change the following proposed amendment to the existing charter of the City of Fort Worth, to wit:

"Amendment No. Two.

"An amendment to the existing charter of the City of Fort Worth, Texas, by adding to Chapter IV, Section 6 thereof, providing for the means, manner, time and place for the election of City Councilmen of the City of Fort Worth, and repealing all provisions of the charter in conflict therewith.

"Shall Chapter IV of the existing charter of the city of Fort Worth, Texas, be amended by adding thereto Section 6, which shall hereafter read as follows:

"Section 6: Hereafter all candidates for the office of City Councilmen of the City of Fort Worth shall receive a majority vote of the electors voting at an election of City Councilmen before they shall become eligible to the office. Should any candidate, or candidates, receive less than a majority vote at such election, then the two candidates receiving the highest popular vote in their respective places to which they aspire shall be entitled to have their names placed on the ballot at a second election, which shall be held in the City of Fort Worth on the first Tuesday after the fourth Monday of April next after the results of the first election are ascertained. It shall be the duty of the City Council to make all necessary provisions therefor; all provisions of the Charter of the City of Fort Worth and especially those of Chapter III and IV are hereby repealed in so far as the same conflict with the provisions hereof, and candidates who receive a majority of the votes cast for candidates in their respective places shall be declared elected to such office."

The city council is composed of nine members, all of whom were made defendants, but after the suit was instituted three of the members filed a pleading joining with plaintiffs in the suit and adopting the allegations of their petition.

The defendants answered by general demurrer, special exceptions, a general denial, and special pleas of fact.

The trial judge sustained the general demurrer and special exceptions, presenting the elements of a general demurrer, and dismissed the suit, after plaintiffs had declined to amend.

By one of the special exceptions and by counter propositions in appellees' briefs, the point is made that it is apparent from plaintiffs' pleadings that the sole basis of claim of individual right in the petitioners to the mandamus prayed for is the fact that they are qualified voters in the city, and therefore they have no justiciable interest in the subject-matter of the controversy different from that of the general public, in the absence of which they showed no right to the writ.

Article 11, § 5, of our State Constitution, reads: "Cities having more than five thousand (5000) inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters, subject to such limitations as may be prescribed by the Legislature, and providing that no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State."

Article 1165, Rev.Civ. Statutes, provides: "Cities having more than five thousand inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters, subject to such limitations as may be prescribed by the Legislature. No charter or any ordinances passed under said charter shall contain any provision inconsistent with the Constitution or general laws of this State. * * * No city charter shall be altered, amended or repealed oftener than every two years. The governing body of such city may, by two-thirds votes of its members, or upon petition of ten per cent of the qualified voters of said city, shall provide by ordinance for the submission of the question, 'Shall a commission be chosen to frame a new charter.'"

Article 1166 reads: "The ordinance providing for the submission of such question shall require that it be submitted at the next regular municipal election, if one should be held, not less than thirty nor more than ninety days after the passage of said ordinance; otherwise it shall provide for the submission of the question at a special election to be called and held not less than thirty days nor more than ninety days after the passage of said ordinance and the publication thereof in some newspaper published in said city."

Article 1170 reads: "When the governing body desires to submit amendments to any existing charter and in the absence of such petition, said body may, on its own motion, and. shall upon the petition of at least ten per cent of the qualified voters of said city, submit any proposed amendment or amendments to such charter. The ordinance providing for the submission of any proposed amendment shall make the same provisions for holding the election and publishing notice thereof as provided in the second article of this chapter. The governing body of said city shall cause the city clerk or city secretary to mail a copy of the proposed amendment or amendments to every qualified voter in said city as appears from the tax collector's rolls for the year ending January 31st, preceding said election. Every amendment submitted must contain only one subject, and in preparing the ballot for such amendment, it shall be done in such manner that the voter may vote 'Yes' or 'No' on any amendment or amendments without voting 'Yes' or 'No' on all of said amendments. Each such proposed amendment, if approved by the majority of the qualified voters voting at said election, shall become a part of the charter of said city. No amendment shall be considered adopted until an official order has been entered upon the records of said city by the governing body thereof declaring the same adopted."

Appellants insist that the provisions of article 1170 that the governing body of a city "'shall upon the petition of at least ten per cent of the qualified voters of said city, submit any proposed amendment or amendments to such charter," are mandatory, leaving no discretionary authority in the governing body to refuse a petition which comes strictly within those provisions.

They stress the opinion written by Chief Justice Gaines in Kimberly v. Morris, 87 Tex. 637, 31 S.W. 808, 809. That was a suit for a writ of mandamus to compel the commissioners' court to order a local option election in accordance with a statute requiring the commissioners' court to order such an election upon a petition therefor by the prescribed number of qualified voters. The following was said in the opinion: "The statute referred to in the questions certified makes it the duty of the commissioners' court of a county to order an election, upon the petition of 250 voters of the county. It confers upon the voters so petitioning a clear legal right to have the election ordered; and if the court, upon its refusal to make the order, cannot be compelled by mandamus, it leaves them without a remedy for the enforcement of the right. It is a matter in which, from its nature, the petitioners cannot have a pecuniary interest; but, since the law expressly confers the right to demand the election, it cannot be said that it does not recognize in them an interest for its enforcement. It was not contemplated, as we think, that they should be left without a remedy, or with a remedy dependent solely upon the will of the state's official attorney."

But in Yett v. Cook, 115 Tex. 205, 281 S.W. 837, 841, it was held that mandamus would not lie to compel the city council of the city of Austin to call an election for city councilmen, on the petition therefor by certain citizens and their right to maintain the suit being predicated upon allegations that they were citizens and taxpayers and qualified voters in the city of Austin, and upon charter provisions making it the duty of the council to order such an election upon a petition of such of its citizens, with a provision that the city council may be compelled to order the election by writ of mandamus. It was pointed out that the provision for mandamus was repealed by a later charter amendment. The court then said:

"We might well rest our opinion on this question on the construction of the charter alone, but there is still another fundamental reason why the relator cannot maintain this action. It is a rule of universal acceptation that to entitle any person to maintain an action in court it must be shown that he has a justiciable interest in the subject-matter in litigation, either in his own right or in a representative capacity. State of Texas v. Farmers' Loan & Trust Co., 81 Tex. 530, 545, 17 S.W. 60, and other cases cited below. Whatever may be the rule in

other jurisdictions, there can be no doubt that in Texas an action relating to elections or other matters of law enforcement, not involving questions of taxation or unlawful expenditure of public funds, cannot be maintained by a relator or plaintiff whose interest is only that of the public generally, in the absence of a valid statute authorizing the suit. [Citing many cases.] * * *

"In Dickson v. Strickland, supra [114 Tex. 176, 265 S.W. 1072], we reiterated what had been declared in the Staples Case [112 Tex. 61, 245 S.W. 639], saying:

" 'It is not claimed that appellant Dickson has any interest in the subject-matter of this suit other than to subserve the public interest. His lack of special interest is fatal to his capacity to maintain his suit in the absence of a valid statute authorizing him to sue. City of San Antonio v. Strumberg, 70 Tex. 366, 7 S.W. 754. Again, as plainly declared by this Court in Staples v. State, 112 Tex. [61], 68, 245 S. W. [639], 641: "Where the suit is for the benefit of the public at large, and no citizen is affected differently from all other citizens, the State, as agent of all, is properly interested for the benefit of all citizens;" and such a suit can only be maintained by those authorized under the Constitution to protect public rights and interests.' 114 Tex. [176], 196, 197, 265 S. W. 1012, 1019."

Then follow citation of numerous decisions cited by appellants here, including Kimberly v. Morris, 87 Tex. 637, 31 S.W. 808, with this comment thereon: "None of these cases support the position of defendant in error. In Kimberly v. Morris, a question of taxation was also involved, and the Court expressly declined to determine the broad position relied on by relator."

That rule of decision was followed by this court in the case of City Council of Wichita Falls v. M. H. Coker, 93 S.W. (2d) 459. Also in City of Goose Creek v. Hunnicutt, 118 Tex. 326, 15 S.W.(2d) 227, and City of Goose Creek v. Hunnicutt, 120 Tex. 471, 39 S.W.(2d) 617. See, also, 28 Tex.Jur. § 623, and 16 Tex.Jur. § 109, p. 212.

■ Under the foregoing authorities, we conclude that appellants have no justiciable interest in the matter of submitting the proposed amendment to the voters of the city, and therefore they show no right to maintain this suit.

We conclude further that notwithstanding the provisions of article 1170, made the basis of the petition for the election, the petition for mandamus in this suit failed to show sufficient grounds for the writ on the merits, because if the amendment had been adopted it would have been ineffective for the reasons hereinafter noted.

Article 4, § 2, of the City Charter of Fort Worth, provides: "There shall be but one election, and that a general election, for the purpose of selecting members of the City Council, the same to be held biennially, the first election after the adoption of this charter to be held on the first Tuesday after the first Monday in April, A. D. 1925, and thereafter on the same day of each succeeding year."

The proposed amendment provides for a second election in the event of failure of any candidate to receive a majority of all the votes in the first election. But it leaves in force the requirement for a biennial election to be held on the first Tuesday after the first Monday in April, and provides that the second election shall be held three weeks later, to wit, on the first Tuesday after the fourth Monday in April next after the results of the first election are ascertained.

That amendment would, in the event of a second election, operate to extend the term of office of the member of the council filling the position for which the second election is held more than two years, which is forbidden by section 30 of article 16 of the State Constitution, providing that the duration of all offices not fixed by that Constitution shall never exceed two years; and the provision of article 1165, Rev.Civ. Statutes, that "no charter or any ordinances passed under said charter shall contain any provision inconsistent with the Constitution or general laws of this State."

Appellants have cited State ex rel. Marcolin v. Smith, 105 Ohio St. 570, 138 N.E. 881, by the Supreme Court of Ohio. That was a proceeding for a writ of mandamus to compel the secretary of state to submit to the voters a proposed amendment to the Constitution pursuant to a clear mandatory provision of the Constitution requiring the secretary of state to submit the same, upon a petition signed by a designated number of electors, and the petition filed was signed by that number. In the opinion of the majority of the court, it was held, in effect, that the mandamus

prayed for should issue as shown by the following language used in the majority opinion: "It has thus become the established law of this state that no officer or tribunal may interfere either with the enactment of laws or the amendment of the Constitution while the same is in process, upon the ground that such legislation, if enacted, or constitutional amendment, if adopted, will be in conflict with the Constitution, state or federal. These questions are and must necessarily be reserved for consideration and determination after the legislative or constitution-making body shall have fully performed its function and such new law or constitutional amendment shall have become effective." ·

Three decisions of the same court are cited in the majority opinion to support that conclusion, the leading case being Pfeifer v. Graves, Secy. of State, 88 Ohio St. 473, 104 N.E. 529; and decisions of other states as well are cited in the concurring opinion of one of the Justices. However, two members of the court, including Marshall, Chief Justice, dissented from the conclusion of the majority, and in the dissenting opinion of the Chief Justice it is strongly argued that the former decisions of the Supreme Court of Ohio, and particularly the Pfeifer Case, do not sustain the decision of the majority, with a further citation of numerous decisions of other states supporting the dissenting opinion.

■■ Whatever may be the rule of decisions of other states to the contrary, we believe it is definitely settled by the decisions of this state that the rule applicable in suits for injunctive relief, to the effect that the court will not render a judgment that will accomplish no benefit to the complainant, is equally applicable here. Even though the petitioners for the submission of the proposed amendment brought themselves within the letter of article 1170, Rev. Civ.Statutes, the court will not require the calling of the election if it appears that the amendment, if adopted, would be in violation of the constitutional provisions prohibiting the duration of any term of office for more than two years, because, as expressed in some of the decisions, that would be requiring the doing of a vain thing. And as held in State v. Catlin, 84 Tex. 48, 19 S.W. 302, section 17, article 16 of the Constitution, providing that "all officers within this State shall continue to perform the duties of their offices until their successors shall be duly qualified," was intended to meet such emergencies as might occur under laws requiring elections or appointments to such offices to be made every two years, but it could not be construed as repugnant to section 30 of article 16 limiting the terms of all officers to two years. Furthermore, the petition for submission of the proposed amendment provided for its submission "without alteration or change" by the city council.

Among the many decisions supporting our foregoing conclusion are the following: Houston Tap & B. Ry. Co. v. Randolph, 24 Tex. 317; 28 Tex.Jur. § 20, pp. 549, 550; 28 Tex.Jur. § 6, p. 522; Moore v. Rock Creek Oil Corp. (Tex.Com.App.) 59 S.W. (2d) 815; McCutcheon v. Wozencraft, 116 Tex. 440, 294 S.W. 1105; Holcombe v. Fowler, 118 Tex. 42, 9 S.W.(2d) 1028; Holman v. Pabst (Tex.Civ.App.) 27 S.W. (2d) 340 (writ of error denied); State ex rel. Davies v. White, 36 Nev. 334, 136 P. 110, 50 L.R.A.(N.S.) 195; State ex rel. Cranfill v. Smith, 330 Mo. 252, 48 S.W.(2d) 891, 81 A.L.R. 1066; City of Houston v. Allred, 123 Tex. 35, 66 S.W.(2d) 655.

■ We conclude further that the city of Fort Worth was a necessary party defendant in this suit, since its interests will necessarily be affected if the proposed amendment should be adopted. Such an amendment to its charter would be permanent and effective long after the present city councilmen have ceased to hold office, and the city would be compelled to incur the expense of mailing a copy of the proposed amendment to every qualified voter in the city and the additional expense of holding the election. And the point made by appellants, that the city councilmen, made defendants here, have no personal interest to be effected by the granting of the petition for mandamus, emphasizes the necessity of making the city a defendant, since it would be unjust to them to be adjudged to pay costs of the suit defended solely in the interest of the city. O'Keefe v. Robison, 116 Tex. 398, 292 S.W. 854; Diamond Hill Independent School District v. Bell (Tex.Civ.App.) 250 S.W. 754; Atwood Cotton Breeding Farms v. Gallagher, 123 Tex. 505, 73 S.W.(2d) 525.

For the reasons noted, all assignments of error are overruled, and the judgment of the trial court is affirmed.