**Ronnie B. HUMPHREY, Sam Flores, Ruben "Rocky" Contreras, Javier C. Cuevas, Bruno Martinez, and Betty Ann Matthies, Appellants,**

v.

**Edward BALLI, M.D., Sophia Y. Balli, Marilyn Bouquet, Tommy Bouquet, Carlos D. Brawner, G.R. Brown, Abel Casas, Diana H. Casas, John T. Crawford, Kathryn DeLaney, Joe Engbrock, Matthew Engbrock, Nancy Hagerup,**

---

520

Scott Hagerup, Frances Harkins, Ann Leithead, John A. Leithead, Mark Mehrens, Lisa Perry, Ken Richter, Heather Grace Rouhotas, Clint Taft, Jo'An Y. Tatum, William R. Tatum, and Donna J. Taylor, Appellees.

No. 04–00–00740–CV.

Court of Appeals of Texas,
San Antonio.

July 31, 2001.

Angela C. Dickerson, City Attorney, Seguin, Howard P. Newton, Matthews & Branscomb, P.C., San Antonio, for appellants.

Robin V. Dwyer, Moore, Pape & Dwyer, L.L.P., Seguin, for appellees.

Sitting: TOM RICKHOFF, Justice, ALMA L. LÓPEZ, Justice, and SARAH B. DUNCAN, Justice.

Opinion by SARAH B. DUNCAN, Justice.

Members of the Seguin City Council appeal the trial court's order granting a writ of mandamus compelling them to honor a citizens' petition for referendum relating to the sale of city-owned property. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On May 2, 2000, the Seguin City Council voted to accept a proposal by IESI TX Corporation to purchase a 93–acre tract of city-owned land and the city's municipal solid waste permit. To implement its decision, the council passed Resolution No. 00R–53, which states in part:

> WHEREAS The City Council previously authorized the solicitation of proposals for the sale of the Stagecoach Road Landfill property and transfer of Municipal Solid Waste Permit # 97;

. . .

. . . BE IT RESOLVED that the City Manager and City Attorney of the City of Seguin are hereby authorized to negotiate and prepare all such agreements as necessary between the City of Seguin, Texas and IESI TX Corporation for sale of the [landfill and permit] in accordance with the basic terms and conditions of the IESI Proposal and amendments as attached hereto.

BE IT FURTHER RESOLVED that the City Council hereby authorizes the City ·Manager to execute any and all of said agreements subject to review of the City's environmental counsel.

Shortly thereafter, on Saturday, May 6, 2000, the City and IESI executed an earnest money contract.

On Monday, May 8, 2000, the city secretary received a petition for referendum containing over 500 qualified signatures.[1] The petition recites that the citizens do not want the tract of land used for a landfill and instructs the city council and city manager "to cease all activities toward the use of that property for solid waste landfill purposes and . . . [to] repeal, effective immediately, the action taken by the City Council at the meeting of May 2nd to ac-

cept the bid from IESI to buy the . . . property and its permit." At a specially called meeting on May 11, the city secretary certified that the petition contained signatures of the requisite number of registered, qualified voters and presented the petition to the city council. After meeting in executive session, the council voted to reject the petition on advice of counsel on the ground it would be unconstitutional.

On May 30, 2000, twenty-five of the residents who signed the petition filed a petition for writ of mandamus to compel the city council to either repeal the ordinance or submit it to a popular vote. Since none of the material facts are in dispute, the parties submitted the case to the court on cross motions for summary judgment. The court granted the plaintiffs' motion and signed an order issuing a writ of mandamus against the eight members of the Seguin City Council. The six council members who voted to reject the petition appeal. Their position is supported by amicus briefs filed by IESI TX Corporation, the Texas Municipal League, and the Texas City Attorneys Association.

### STANDARD OF REVIEW

A proceeding for a writ of mandamus initiated in the trial court is subject

---

1. Article VIII of the Seguin City Charter is entitled "Legislation by the People, Initiative and Referendum." Section 8.1, captioned "General Power," provides: "The qualified voters of the City of Seguin, in addition to the method of legislation hereinbefore provided, shall have the power to direct legislation by initiative and referendum." Section 8.03, captioned "Referendum," provides:

Qualified voters of the City of Seguin may require that any ordinance or resolution, with the exception of ordinances or resolutions levying taxes, appropriating money, or authorizing the issuance of either tax or revenue bonds, whether original or refunding, passed by the city council be submitted to the voters of the city for approval or disapproval by submitting a petition for this purpose within thirty (30) days after final passage of said ordinance or resolution. . . . Said petition shall be . . . submitted to the person performing the duties of city secretary. Immediately upon the filing of such petition, the person performing the duties of city secretary shall present said petition to the city council. Thereupon the city council shall immediately reconsider such ordinance or resolution and, if it does not entirely repeal the same, shall submit it to popular vote. . . . Pending the holding of such election, such ordinance or resolution shall be suspended from taking effect and shall not later take effect unless a majority of the qualified voters vote in favor of retaining such ordinance or resolution.

to review on appeal as any other civil suit. *Anderson v. City of Seven Points,* 806 S.W.2d 791, 792 n. 1 (Tex.1991). We review a summary judgment de novo. *Valores Corporativos, S.A. de C.V. v. McLane Co.,* 945 S.W.2d 160, 162 (Tex.App.—San Antonio 1997, writ denied). Accordingly, we will uphold a traditional summary judgment only if the summary judgment record establishes there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law on a ground set forth in the motion. *Id.;* Tex.R.Civ.P. 166a(c). In deciding whether the summary judgment record raises a genuine issue of material fact, we "view as true all evidence favorable to the non-movant and indulge every reasonable inference, and resolve all doubts, in its favor." *Valores,* 945 S.W.2d at 162. "When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both sides' summary judgment evidence and determine all questions presented ... [and] render the judgment that the trial court should have rendered." *FM Properties Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex.2000).

## APPLICABLE LAW

■ A matter is proper for the initiative and referendum if (1) "the subject matter of the proposed ordinance is legislative in character"; and (2) it "has not been withdrawn or excluded by general law or the charter, either expressly or by necessary implication, from the operative field of initiative." *Glass v. Smith,* 150 Tex. 632, 244 S.W.2d 645, 654 (1951). If these conditions are met, mandamus is appropriate, "though that product may la-

ter prove to be unwise or even invalid." *Id.*

## LEGISLATIVE IN CHARACTER?

■ The council members contend the trial court erred in denying their motion for summary judgment and in granting the citizens' motion because the subject matter of the petition is not legislative in character. We disagree.

■ Legislative matters are those "of a general, or permanent, character"; and a legislative ordinance is one "originating or enacting a permanent law or laying down a rule of conduct or course of policy for the guidance of the citizens or their officers and agents." *Denman v. Quin,* 116 S.W.2d 783, 786 (Tex.Civ.App.—San Antonio 1938, writ ref'd). Administrative or executive ordinances, on the other hand, "are only transitory, or temporary, or routine ... in their purpose and effect," and "an ordinance which simply puts into execution previously-declared policies, or previously-enacted laws, is administrative or executive in character." *Id.* The sale of city-owned property is a legislative act. *See Brooks v. Watchtower Bible & Tract Soc'y of Florida, Inc.,* 706 So.2d 85, 89 (Fla.Ct.App.1998).[2]

The ordinance at issue in this case authorizes a permanent, uniquely policy-oriented act—the sale of 93 acres of city-owned land that was once used as a landfill and the City of Seguin's landfill permit. The ordinance is thus not routine; nor is it the implementation of a previously-enacted law. Therefore, guided by *Glass* and *Denman,* and in keeping with the decision in *Brooks,* we hold the ordinance at issue in this case is legislative in nature as a matter of law.

---

**2.** Although the council members and amici argue that a city's decision to sell a piece of land is a purely proprietary business decision, the city attorney admitted at oral argument there is no authority supporting importation of the "governmental-proprietary" distinction into this context.

## WITHDRAWN OR EXCLUDED?

 The amici argue that the subject matter of the petition has been withdrawn or excluded from the initiative and referendum process by Chapter 272 of the Texas Local Government Code, which prescribes procedures to be followed for the sale of land by a city.[3] However, the City did not move for summary judgment on this ground and it is therefore waived. *See* TEX.R.CIV.P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 342–43 (Tex.1993). Moreover, withdrawal "will not be implied . . . unless the provisions of the general law or of the charter are clear and compelling to that end." *Glass*, 244 S.W.2d at 649. That is not the case here.

## CONSTITUTIONALITY?

 As in the City of Austin's charter, which was the subject of the *Glass* opinion, "[t]here is nothing in the [City of Seguin's] charter that qualifies the mandatory duty of [the council members] in the calling and holding of initiative elections so that they may decline to hold those which in their opinion might result in the adoption of void ordinances." *Glass*, 244 S.W.2d at 653. Nonetheless, the council members argue they had a duty to review the constitutionality of the petition and reject it because it would violate state and federal constitutional provisions prohibiting the impairment of contracts and retroactive laws. In support of their argument, they rely upon the following excerpt from the supreme court's opinion in *Glass:*

In [*Bowe v. Secretary of the Commonwealth of Massachusetts*, 320 Mass. 230, 69 N.E.2d 115 (1946)] it appears that the Constitution of Massachusetts provided for popular initiative on a state level, but the very constitutional provisions authorizing the initiative limited that right by providing that no proposition inconsistent with the individual's right to freedom of the press, freedom of speech, freedom of elections, and the right of peaceable assembly should be the subject of initiative or referendum petitions.

*Glass*, 244 S.W.2d at 649. However, this aspect of the *Glass* opinion does not relate to whether the city council may decide whether a petition proposes a constitutional course of action. Indeed, that proposition was expressly rejected in *Glass*. Rather, the court's discussion relates to "whether the initiative election sought by respondents is within the field in which the initiatory process is operative and therefore one which they have a legal right to have held." *Id.* Thus, the court noted "[t]he Massachusetts Court declined to decide in advance the substantive validity questions but held that it not only could but should decide in advance whether the subject matter of the proposals had been reserved from initiative procedure." *Id.; see also id.* at 653–54 ("there should be no judicial interference with the legislative process. If the courts into whose province the duty is committed by the Constitution to adjudge the validity or invalidity of municipal legislation will not themselves inter-

---

**3.** [B]efore land owned by a political subdivision of the state may be sold or exchanged for other land, notice to the general public of the offer of the land for sale or exchange must be published in a newspaper of general circulation in either the county in which the land is located. . . . The notice must include a description of the land, including its location, and the procedure by which

sealed bids to purchase the land or offers to exchange the land may be submitted. The notice must be published on two separate dates and the sale or exchange may not be made until after the 14th day after the date of the second publication.

TEX. LOC. GOV'T CODE ANN. § 272.001(a) (Vernon Supp.2000).

fere with the legislative process how could they justify their inaction while ministerial officers, usually without judicial training, interrupted that process?"); *see also City of Dallas v. Dallas Consol. Elec. St. Ry. Co.*, 105 Tex. 337, 148 S.W. 292 (1912).

The council members also rely heavily on *City of Galveston v. Trimble*, 241 S.W.2d 458 (Tex.Civ.App.—Galveston 1951, writ ref'd n.r.e.). In *Trimble* the petitioners sought a writ of mandamus to compel city officials to either repeal or set for a vote a public housing cooperation agreement and the city council's resolution approving execution of the agreement. The court held the effect of the resolution "would be to impair the obligations of the City's existing contract, which appears to be a valid and subsisting one; hence, it would be invalid, under well-settled authorities." *Id.* at 460. We decline to follow *Trimble* for several reasons. First, *Trimble* is clearly distinguishable since the Legislature had granted the city council "the **exclusive** right to decide whether such a co-operative agreement ... should be made." *Id.* (emphasis added). *Glass* thus dictates that the matter was one withdrawn from the field in which initiative and referendum are operative. *See Glass*, 244 S.W.2d at 650–52. Moreover, *Trimble* has never been cited by a court; it was decided before *Glass;* and it relied in part on *McCarty v. Jarvis*, 96 S.W.2d 564 (Tex. Civ.App.—Fort Worth 1936, writ dismissed), which was overruled in relevant part by the supreme court in *Glass. Glass*, 244 S.W.2d at 654–55.

### CONCLUSION

We hold as a matter of law the petition for referendum concerns a legislative matter; and the subject matter of the petition has not been withdrawn from the field in which referendum is operative. We therefore affirm the trial court's judgment.